## BARRON v. BARRON.

### Civ. No. 432 and S. F. No. 4509; June 11, 1908.

#### 96 Pac. 273.

Divorce—Interlocutory Decree—Vacation and Dismissal.—After six months prescribed by Civil Code, section 131, and Code of Civil Procedure, section 473, within which appeal may be taken from or attack by other means inaugurated against an interlocutory judgment of divorce by default, has expired, plaintiff cannot, on an ex parte application, have the same set aside and the suit dismissed before expiration of the year during which such judgment must be in existence, under section 131, preceding entry of final judgment.[1]

Divorce—Interlocutory Decree—Waiver of Right to Divorce.— An interlocutory judgment of divorce provided for by Civil Code, section 131, which becomes final by the lapse of six months from entry without appeal or motion to set it aside, merely establishes conclusively plaintiff's rights to a divorce, and it does not necessarily follow that he or she may not waive the exercise of such right and dismiss the action.

APPEAL from Superior Court, City and County of San Francisco; F. H. Kerrigan, Judge.

Action for divorce by Rita A. Barron against George H. Barron. From an order denying a motion by plaintiff to dismiss a motion by defendant to set aside and vacate an order on motion of plaintiff, setting aside and vacating an interlocutory judgment for plaintiff, and from an order granting the motion of defendant sought to be dismissed, plaintiff appeals. On affirmance by the district court of appeal, plaintiff appeals. Affirmed.

The following is the opinion of Hart, J. (concurred in by Chipman, P. J., and Burnett, J.), in the district court of appeal.

"The plaintiff commenced a suit against the defendant for a divorce, in the superior court of the city of San Francisco, by filing a verified complaint in the office of the clerk of said court on the first day of June, 1904. On the same day sum-

---

[1] Cited and followed in Reed v. Reed, 9 Cal. App. 754, 100 Pac. 897, holding that at the end of the year following the granting of the interlocutory judgment, the court has jurisdiction only to enter a final decree carrying the interlocutory judgment into effect.

mons was issued in said action, and on the sixth day of June, 1904, the same was served on the defendant in said city of San Francisco. The defendant did not answer the complaint within the time allowed him by law, and, accordingly, his default was entered on the twenty-third day of June, 1904. The cause was tried on the twenty-fifth day of June, 1904, the defendant not appearing at said trial, and, after hearing the proofs, the court granted an interlocutory judgment in favor of the plaintiff, as authorized by section 131 of the Civil Code. On the sixth day of April, 1905, something over nine months after the entry of the interlocutory judgment, plaintiff made an application to the court, in the form of a petition, in which all the proceedings theretofore had in the case were fully set out, for an order setting aside and vacating said interlocutory judgment. Said petition also alleged that it was the desire and intention of plaintiff, if said interlocutory judgment was set aside, to move for a dismissal of said action. No notice of this last-mentioned proceeding was served upon or given the defendant. 'On said sixth day of April, 1905, the said court read and heard said petition, and made an order and decree in said action vacating and setting aside the interlocutory judgment and decree made and entered on the twenty-fifth day of June, 1904, and dismissing the said action, and directing the clerk of said court to enter a dismissal thereof upon his docket.' This order of the court was entered on the sixth day of April, 1905. On the thirty-first day of May, 1905, the defendant, having by some means learned of the action of the court vacating the interlocutory judgment, gave notice of a motion for an order vacating and setting aside the said order of April 6, 1905, setting aside and vacating the interlocutory judgment made and entered on the twenty-fifth day of June, 1904. On the second day of June, 1905, the plaintiff filed a motion to dismiss the last-mentioned motion by the defendant for an order vacating and setting aside the said order of April 6, 1905. On September 25, 1905, defendant's motion to vacate the order made on the 6th of April, 1905, and the plaintiff's motion to dismiss said motion of defendant, were heard by the court, and an order made and entered denying the motion of plaintiff to dismiss the motion of defendant, and granting the motion of defendant to set aside and vacate the order made on the sixth day of April, 1905, setting aside and vacating the interlocutory

judgment entered on the twenty-fifth day of June, 1904. The plaintiff prosecutes this appeal from the order denying her motion to dismiss the motion of the defendant and from the order granting the defendant's motion to set aside and vacate the order vacating and setting aside the interlocutory judgment.

"The appellant contends that the court was without jurisdiction to make the order upon defendant's motion, as heretofore explained, because the action had been dismissed and was no longer pending in said court. On the other hand, the respondent contends that the court exceeded its jurisdiction in making the order setting aside the interlocutory judgment and the subsequent order dismissing the action after the lapse of six months after the entry of said interlocutory judgment. Under the decisions of the supreme court having any bearing upon the question, as we understand them, the contention of the respondent must be sustained. Section 131 of the Civil Code reads: 'In actions for divorce the court must file its decision and conclusions of law as in other cases, and if it determines that no divorce shall be granted, final judgment must thereupon be entered accordingly. If it determines that the divorce ought to be granted, an interlocutory judgment must be entered, declaring that the party in whose favor the court decides is entitled to a divorce, and from such interlocutory judgment an appeal may be taken within six months after its entry, in the same manner and with like effect as if the judgment were final.' The exact question presented here is a new one in this state. By this we are to be understood as saying that whether a plaintiff who has obtained an interlocutory judgment by default in an action for divorce may, upon an ex parte application, have the same set aside and the suit dismissed at any time before the expiration of the year during which said interlocutory judgment must be in existence preceding the entry of final judgment, is a question upon which there are in this state no judicial precedents precisely in point.

"The policy of the law is not only to discourage divorces, but to encourage the reconciliation of married persons between whom some degree of estrangement has arisen which may likely or probably will lead to permanent separation and the restoration of the parties to the status of unmarried people through judicial determination. The institution of mar-

riage constitutes one of the essential and strongest of the cornerstones of the social fabric. While in a restricted sense it involves a contractual relation in which the immediate parties themselves are alone vitally interested, in a comprehensive sense it affects and permeates and is an indispensable part of the whole social system, and in that view becomes a question of vital public concern. Consequently, the public is in fact, if not in name, a party to every action for the dissolution of the marriage relation. Therefore the legislative policy has been, is, and always will be, so long as society is supported by its present standard, against allowing divorces for slight or trivial or capricious reasons, but strongly favors a prevention of them where it can be done consistently with the highest interests of the immediate parties and of society. Our present law is the fruition of many years of legislative effort to bring about the ends to which we have referred. First, it was thought that the interdiction of the marriage of the divorced parties within a year after the final decree would discourage, to some extent, the desire for legal separation for at least slight and capricious causes. This enactment proved futile for the purpose intended to be achieved, for the courts held that, while in this state a marriage contrary to the provisions of that law would be void, either party could avoid the effect of the law by having the marriage ceremony solemnized in another state at any time after the entry of the decree. The facility with which such persons could cross the California line, either into Nevada, Oregon or Arizona, soon demonstrated the utter impotency of the enactment to accomplish its principal design. Then the legislature gave us the present law, by the provisions of which a final judgment must be predicated of an interlocutory judgment of one year's existence. Many specific reasons could be given why the legislature has thus exercised such jealous solicitude over the institution of marriage as evidenced by the restrictions which it has thrown around the action for divorce. Among these it has been suggested that the provision for the postponement of a final decree of divorce for a specified time after the finding that a party was entitled thereto was founded upon the consideration that the parties might be reconciled during such time, and a final separation thus obviated: De Yoe v. Superior Court, 140 Cal. 484, 98 Am. St. Rep. 73, 74 Pac. 28, per Mr. Justice Angellotti. And again, as is further suggested by

the learned writer of the opinion in the case just cited, 'it might be contended with much force that such legislation was justified upon the theory that the postponement of the giving of final judgment for a specified time removes to some extent the temptation to resort to collusion or fraud, in order to obtain a speedy divorce and contract a new marriage.'

"We have thus referred to some extent to the nature of the contract of marriage and its peculiar relation to the state and its effect upon society, in order to show that the policy of the law is to discourage divorces and encourage reconciliation between the parties where divorces seem imminent, thus showing the reasons impelling legislation regulating the subject of marriage and divorce. And it is upon the policy of the law against divorces that counsel for appellant builds almost the entire fabric of his argument in support of the principle for which he contends here, to wit: That the statute should be so construed as to sustain the action of the court in setting aside, on the motion of plaintiff, an interlocutory judgment in an action for divorce, at any time within the year during which such judgment must exist before the entry of a final judgment; that such a course would harmonize with the public policy upon the subject as expressed through the legislation thereon. But, the supreme court, in a very recent case, has used language which forbids such a construction of section 131 of the Civil Code as would authorize either party to a divorce suit, upon a mere ex parte application, to cause an interlocutory judgment therein to be set aside and vacated after the expiration of the time prescribed by said section within which an appeal may be taken from or an attack by any other means inaugurated against such interlocutory judgment. The statute provides, as will be observed, that an appeal may be taken from the interlocutory judgment in an action for divorce within six months after the entry of such judgment. Section 473 of the Code of Civil Procedure prescribes the same time limit within which proceedings under that section may be initiated. In the case at bar the motion to vacate the interlocutory judgment and to dismiss the action and the orders of the court to that effect were made over nine months after the entry of such judgment. In Claudius v. Melvin, 146 Cal. 260, 79 Pac. 897, the following plain, unambiguous and unqualified language is used by Mr. Justice Shaw, speaking for the court: 'The judgment entered on Sep-

tember 4, 1903, therefore, constituted a valid interlocutory judgment declaring the plaintiff entitled to a divorce. As such it was subject to be vacated on appeal, or on motion for a new trial, or by proceedings under section 473 of the Code of Civil Procedure. The time for all these proceedings having expired, and no such proceeding to vacate it having been instituted, *the court thereupon lost all power by any proceeding in the case to modify or vacate the judgment, in so far as it constituted an interlocutory judgment.'* (The italics are ours.) The foregoing language is, as already suggested, so clear and plain as to the meaning intended to be thereby conveyed that nothing can be added to make its meaning clearer. The proposition as thus declared is stated without qualification—that the time having expired within which proceedings to vacate such judgment could be instituted, and no authorized proceedings having been instituted within the time limited, the 'court thereupon lost all power by any proceeding in the case to modify or vacate the judgment, in so far as it constituted an interlocutory judgment.' Indeed, if this language cannot be clearly understood, then surely judicial opinions are of little force and practically of no use as precedents upon which nisi prius courts can rely to guide them to correct conclusions, or at least conclusions in harmony with the regularly authenticated views of the higher courts.

"But it will doubtless be argued that the proceedings authorized to be taken as against such interlocutory judgments are supposed to be initiated by the defendant in the action and not the plaintiff, and therefore the opinion of the supreme court from which we have quoted deals with the section as exclusively applying to and qualifying the rights of the defendant in such case, and that the opinion may be interpreted as having no application to a case, like the one here, where the plaintiff is merely attempting to recall her own act. The unequivocal language of the opinion, in no manner or degree or in any sense qualifying or attempting to qualify the proposition expressed thereby, will not, by even the most adroit or subtle interpretation, if indeed interpretation is necessary to gather its true meaning, support such a position. Besides, we think there are sound and unimpeachable reasons why the distinction suggested cannot be sustained. It is our opinion that when the six months have expired within which proceedings may be inaugurated, either by way of appeal or

otherwise, against the interlocutory judgment, such judgment, if no such proceedings have been taken within the time prescribed, becomes a permanent interlocutory judgment and remains so until superseded by the final judgment, into which it finally merges. We think, therefore, the court's power over that judgment, under such circumstances, ceases to exist as clearly and conclusively as does the power of the court over a final judgment after the expiration of the time for an appeal therefrom. We are, of course, assuming the judgment in either case to be valid on its face. Has it ever been supposed for an instant that the court possesses the power to recall a final judgment, valid on its face, and vacate or modify it in any material respect, either upon its own motion or upon the application of one of the parties, after the time within which an appeal may be taken therefrom has elapsed, except where it appears that the judgment entered is not the judgment actually rendered, or some other clerical misprision affecting such judgment is apparent upon the face of the record? The very fact that the legislature has fixed a time within which an attack by any authorized means upon an interlocutory judgment in an action for divorce must be made, if at all, necessarily implies that after the expiration of the time so limited an interlocutory judgment, as such, is as strongly intrenched against disturbance from any cause or any source, except where both parties join in a motion to set it aside, as is a final judgment after the time for appeal therefrom has passed.

''Again, let it be supposed that the plaintiff in the case at bar had, in addition to the allegations declaring the grounds upon which she sought a divorce, alleged that there were certain community property rights, as to which she prayed for an adjustment by the court. Suppose, further, that the defendant defaulted, or failed to answer the complaint or to appear at the trial, and that the court awarded the plaintiff the full relief called for by the allegations of the complaint and as prayed for. In such case, is it possible that more than six months after the entry of the interlocutory judgment, valid on its face, none of the authorized proceedings having been instituted against said judgment within that time, the plaintiff could by any proceeding of her own cause said judgment to be modified or vacated merely because she had been convinced or had convinced herself after the entry of the judg-

ment that she had not, for some reason, thereby obtained a fair adjustment of the community property rights? We think no such contention would for a moment be made, and we think the supposititious case contains not an extreme but a conservative and fair illustration of the precariousness and instability of an interlocutory judgment in an action for divorce if the plaintiff were permitted for any reason to cause it to be set aside or modified after the time when the law contemplates that it is, for the purposes for which it is intended, as formidable as a final judgment.

"The interlocutory judgment in a divorce case is the result or crystallization in concrete form of all the material issues tendered and tried, and presumptively covers and includes all such issues, and, after the time has passed within which it may be attacked, is, as such interlocutory judgment, if valid on its face, as impregnable against attack as a final judgment under similar circumstances.

"The final judgment in a divorce case is, practically and in reality, in our opinion, only the judicial declaration authorized to be made in accordance with the expressed legislative policy of the state against the marriage of married persons already found to be entitled to a divorce within a year from such finding that the interlocutory judgment shall become active and effective, and that the parties may exercise all the rights which such judgment declared them to be entitled to, and which rights, while actually existing, were only dormant because of the avowed policy of the law. These rights, we should say, in other words, became vested rights from the time of the entry of the interlocutory judgment, subject only to be modified or set aside by appeal or by other appropriate proceeding within the time prescribed, but their actual enjoyment postponed, for reasons of public policy, to a future determinate time. Laying aside a consideration of a right of appeal from the final judgment, the legislature has in effect said that 'the interlocutory judgment shall go into effect and become final one year after its entry, unless an appeal within time has been taken therefrom and the same undisposed of at the expiration of the year.'

"If, for any reason, the contention of appellant were sustained, the result would be that, while the defendant could not, after he had allowed the prescribed time to pass without initiating any proceedings against the judgment, exercise any

power over such judgment, the plaintiff would be without any restraint in that respect until the final judgment was entered. It is impossible that the law contemplates any such absurd situation.

''The court below, in making the orders appealed from, no doubt did so upon the theory that it was without jurisdiction to make the order vacating and setting aside the interlocutory judgment and dismissing the action.

''As the action of the court as to the orders appealed from conforms to the views herein expressed, the said orders are affirmed.''

F. A. Berlin for appellant; Lynch & Drury for respondent.

PER CURIAM.—In denying the petition for a rehearing of this cause we are not to be understood as approving that part of the opinion of the district court of appeal which implies that, after an interlocutory decree of divorce has become final by the lapse of six months from its entry without appeal or motion to set it aside, the plaintiff has not the right to dismiss his or her action at any time before the entry of a final decree. The interlocutory decree, when final, merely establishes conclusively the right of the plaintiff to a divorce. It does not necessarily follow that he or she may not waive the exercise of that right. Whether the plaintiff could have done so was not a question arising on this appeal, and it is not decided.